IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DESHAWN STATEN,

                Plaintiff,                OPINION AND ORDER

   v.

                                                     20-cv-227-wmc

STEPHEN A. SEHNEIDER,
ELIZABETH J. KAEDER-SEHNEIDER,
THOMAS T. TAYLOR,
SCOTT B. BROADBENT,
MICHAEL L. ROTH JR.
PIERRE GIAN MAZANETT,
MATTHEW O. MUTIVA,
KYLE. J. JORGENSON,
DR. STACEY L. HOEM,
MICHAEL COCKROFT,
JORDAN W. DUVE, and
CATHERINE L. BROADBENT,

                Defendants.

---

*Pro se* plaintiff Deshaun Staten, who is currently incarcerated at Columbia Correctional Institution ("Columbia"), filed this lawsuit under 42 U.S.C. § 1983, against twelve defendants, all of whom were working at the Wisconsin Secure Program Facility ("WSPF") while he previously was incarcerated there. Staten claims that defendants violated his constitutional and state law rights, as well as the Americans with Disabilities Act and the Rehabilitation Act, in responding to his threats of self-harm and in treating his mental health needs. Staten's complaint is ready for screening under 28 U.S.C. § 1915A. Having reviewed Staten's complaint, the court concludes that if he wants to proceed in this lawsuit, he will have to file an amended complaint that addresses the deficiencies described below.

ALLEGATIONS OF FACT[1]

Plaintiff Deshawn Staten was incarcerated at WSPF in 2019, where defendants were working. Defendants include: Sergeant Scott Broadbent; Sergeant Stephen Sehneider; Correctional Officer Elizabeth Kaeder-Sehneider; Lieutenant Thomas Taylor; Correctional Officer Michael Roth Jr.; Correctional Officer Pierre Gian Mazanett; Correctional Officer Matthew Mutiva; Correctional Officer Kyle Jorgenson; psychologist Dr. Stacey Hoem; Correctional Officer Michael Cockroft; Correctional Officer Jordan Duve; and law librarian Catherine Broadbent.

Staten has a history of mental and emotional distress, which manifested in several suicide attempts during his incarceration at WSPF. In September of 2019, Staten was placed on clinical observation status because he was threatening to kill himself. While he was in an observation status cell, Staten started cutting his wrist with a pen insert that security staff failed to remove from the floor of the cell. Apparently before cutting himself, Staten told defendant Jorgenson his intent, and Jorgenson responded, "go right ahead," and "I don't care if you die or not," and walked away. However, Staten also alleges that Jorgenson informed Sergeant Broadbent that Staten was harming himself, and a few seconds later Broadbent came to Staten's cell, carrying a "gas can," which describes the container containing an incapacitating agent. Broadbent allegedly told Staten that he had been "wanting to use" the incapacitating spray on him. Staten does not allege that Broadbent actually sprayed him, entered the cell or took any further action. Instead, Staten alleges that defendant Taylor arrived in the unit range, and when he asked Staten

---

[1] In addressing any *pro se* litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

if he would come out of his cell, Staten responded that he was trying to kill himself. Taylor responded, "good for me I get to use the gas." Again, Staten does not allege Taylor sprayed him with an incapacitating agent or threatened to harm him, and it appears Taylor walked away.

A half hour later Taylor returned to Staten's cell with a cell extraction team, directing him to come out of his cell. Staten complied and he was escorted to a holding cell for a strip search. No contraband was found on Staten, and he was placed in a new cell, naked and without any property. Upset, Staten showed defendant Cockroft a piece of a pen insert he still possessed, telling him he was about to cut again. Apparently Taylor was present as well; Staten alleges that Taylor walked away from the cell and returned with an incapacitating agent. Taylor asked Staten if he was going to keep self-harming, and when Staten responded he would, Taylor walked away again. Staten alleges that he was left in the new cell, which was "cooled," with no clothes for over 24 hours. He does not detail whether he continued harming himself.

The next day, Staten spoke with defendant Sehneider, who told him defendant Dr. Hoem directed them not to provide anything (presumably clothing) until he stopped self-harming. This caused Staten to start harming himself again with a pen insert, to which Sehneider responded that he did not want to use the gas on him and that he would go ask Dr. Hoem if they could place him in a restraint chair.

When Sehneider left, defendant Kaeder-Sehneider came to Staten's cell, watched him cut himself and told him to stop because they would not do anything for him and that she did not care if he killed himself. Staten has not alleged whether he continued to harm himself or the extent of the harm.

3

Multiple hours passed, and defendants Mazanett and Jorgenson brought dinner trays to Staten's unit range. Jorgenson told Staten he wanted to spray him with the gas, and directed Mazanett to open Staten's food tray trap door, but it appears that Mazanett was hesitant to open the trap door. Instead, a few minutes later, when Staten was holding his trap door, defendants Taylor, Roth, Sehneider and Duve approached his cell with the incapacitating agent and an electric shield, closing the trap door. When Staten asked why they were violating his rights, Taylor responded that Staten no longer had rights. Taylor also told Staten that they would not be placing him in restraints, per Dr. Hoem.

OPINION

Staten seeks to proceed against defendants on Eighth Amendment, Americans with Disabilities/Rehabilitation Act, and state law claims.[2] However, plaintiff's complaint does not satisfy the requirements of Federal Rule of Civil Procedure 8, which requires a "'short and plain statement of the claim' sufficient to notify the defendants of the *allegations* against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis added). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church*

---

[2] Plaintiff also states that he is pursuing a First Amendment retaliation claim in this lawsuit. However, he does not identify protected speech nor the conduct of any of the defendants he claims was retaliatory. Therefore, the court infers that plaintiffs does not actually intend to pursue such a claim, although if this inference is incorrect, in his amended complaint, plaintiff should include allegations with respect to each defendant he believes retaliated against him. Further, he should keep in mind that to state a claim for retaliation, a plaintiff must allege that: (1) he engaged in activity protected by the Constitution; (2) the defendant subjected the plaintiff to adverse treatment because of the plaintiff's constitutionally protected activity; and (3) the treatment was sufficiently adverse to deter a person of "ordinary firmness" from engaging in the protected activity in the future. *Gomez v. Randle*, 680 F.3d 859, 866-67 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 555-56 (7th Cir. 2009).

*of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

I. **Eighth Amendment**

Plaintiff appears to be pursuing four types of claims under the Eighth Amendment's prohibition on cruel and unusual punishment, but his allegations are insufficient to proceed past screening on any Eighth Amendment claims.

*First,* plaintiff appears to challenge the conditions of his confinement when he was being held naked in the observation status cell, apparently without running water. The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement" and to insure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). To state a claim under the Eighth Amendment challenging conditions of confinement, however, a plaintiff must allege that (1) the conditions of confinement were objectively serious, such that they deprive inmates of the minimal civilized measure of life's necessities, and (2) the defendant knew about, but failed to take reasonable measure to prevent the potential harm of that condition. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (citing *Farmer*, 511 U.S. at 834).

"A lack of heat, clothing, or sanitation can violate the Eighth Amendment." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citations omitted). However, plaintiff's allegations about the temperature of his cell are too vague to suggest that he was subjected to cold conditions. While plaintiff alleges that he was naked in a "cooled" cell for over 24 hours and did not have running water, plaintiff does not estimate the temperature he was

subjected to or allege that he was left without food or drinking water, or suffered anything more serious than mild discomfort during that 24-hour period of time. *See also Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (citing several objective factors relevant to whether low temperatures meet the objective element: "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold"). Although the combination of multiple adverse conditions of confinement may satisfy the objective requirement "when the deprivations have a mutually enforcing effective which produces the deprivation of a single, identifiable human need," *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006), plaintiff has not alleged that he was deprived of any life's necessities during this short period of time, much less that he complained to any of the defendants about the conditions of confinement and they responded with deliberate indifference. Without more information about plaintiff's conditions of confinement during this 24-hour period of time, as well as allegations suggesting any defendant failed to respond appropriately to those conditions, plaintiff's allegations do not support a conditions of confinement claim under the Eighth Amendment.

*Second*, an inmate may state a claim under the Eighth Amendment by alleging facts that if accepted permit a reasonable inference that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety. *Id.* at 836. Significant self-harm constitutes "serious harm." *See Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Deliberate indifference to a risk of self-harm is present when an official is subjectively "aware of the significant likelihood that an inmate may imminently" harm

6

himself, yet "fail[s] to take reasonable steps to prevent the inmate from performing the act." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014) (citations omitted). *See also Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

At least as currently pled, plaintiff's allegations do not support an inference that his use of the pen insert was actually harming him. "Ignoring 'an insincere threat from an inmate wanting nothing more than attention' does not confer liability under the Eighth Amendment." *Szopinksi v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (quoting *Lord v. Beahm*, 952 F.3d 902 (7th Cir. 2020)). In *Lord*, the Court of Appeals for the Seventh Circuit affirmed the grant of summary judgment in favor of officers who failed to heed a prisoner's threats of self-harm. While the Seventh Circuit found that Lord presented triable questions with respect to multiple correctional officers' responses to his screams that he was going to kill himself with a razor blade, *id.* at 905, it concluded that his deliberate indifference claim failed as a matter of law because: "Lord's physical injuries consisted only of minor scratches, quickly and easily treated with a gauze bandage," and he "supplied no evidence that he suffered any other form of injury (for example, psychological harm) from his insincere suicide threat." *Id.* As such, the court affirmed the grant of judgment in defendants' favor because Lord sued for damages "without then developing evidence of a recoverable injury." *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 278 (1985); *Gabb v. Wexford Health Servs., Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be

7

actionable requires injury.")). Although *Lord* was decided at the summary judgment and not screening stage, it is instructive here.

The court accepts, as it must, that plaintiff threatened self-harm and committed self-harm with the pen insert, but plaintiff's allegations about his use of the pen insert do not suggest that his injuries were sufficiently serious to support a claim. Although plaintiff alleges that he told numerous defendants that he wanted to kill himself, and, worse, that he was cutting himself repeatedly with a pen insert, plaintiff has not alleged any details about the extent of the harm he inflicted upon himself. Curiously, plaintiff has not alleged that he was bleeding or even in pain; nor does he allege that he sought medical attention for the cuts he gave himself. Given that plaintiff alleges that he was able to *repeatedly* harm himself with the pen insert over what appears to be several hours, and then was able to recommence it again, it strains credulity to infer that plaintiff's injuries were anything beyond minor scratches that caused him minimal discomfort.

For much the same reason, plaintiff has failed to allege facts suggesting defendants were aware that he might be able to seriously harm himself and responded with deliberate indifference to that risk. Plaintiff alleges that he was moved to observation status after he threatened self-harm, and then defendant Jorgenson informed defendant Broadbent that he was cutting himself and Broadbent went to his cell. Although Jorgenson allegedly told plaintiff he did not care if he killed himself and Broadbent said that he wished he could use the gas on plaintiff, Jorgenson took responsive action and there is no allegation that Broadbent actually sprayed plaintiff with the incapacitating agent. Rather, it appears that Broadbent asked for additional assistance with plaintiff because Taylor appeared at his cell soon thereafter. While plaintiff alleges Taylor responded similarly, threatening to use the

8

incapacitating agent on plaintiff, plaintiff further alleges that Taylor ultimately did not spray him and instead arranged for an extraction team to move plaintiff to a different observation cell. Plaintiff's self-harming continued in the new cell, again with a pen insert. Although Cockroft and Taylor allegedly walked away from plaintiff at that point, plaintiff has not alleged that his cutting was actually doing any harm, or that plaintiff had access to any other means to harm himself. Indeed, plaintiff alleges that there was nothing in that cell for the purpose of preventing him from committing self-harm. As such, there is no basis to conclude that Cockroft or Taylor needed to do more than ensure that plaintiff was in a secure cell without other implements for self-harm.

Then, Sehneider interacted with plaintiff, and his response, as currently described, was appropriate. First Sehneider told plaintiff Dr. Hoem had decided not to provide plaintiff any property until he stopped attempting to harm himself. Sehneider, as a correctional officer, was not a in a position to question Dr. Hoem's judgment with respect to plaintiff's property. Then, when plaintiff started self-harming again, Sehneider did more, telling plaintiff he would call Dr. Hoem to inquire about placing plaintiff in restraints. As for defendant Kaeder-Sehneider, while it appears she simply watched plaintiff continuing to cut himself with the pen insert, again, plaintiff has not alleged that he was actually harming himself. As for plaintiff's interactions with Mazanettt and Jorgenson over his cell's trap door, plaintiff does not articulate how either of these defendants ignored any threats of self-harm or actual self-harm. Rather, as best the court can discern, it appears that these defendants (and Taylor, Roth, Sehneider and Duve) were responding to plaintiff's decision to hold the trap door, not any threat of self-harm. Therefore, plaintiff's allegations do not suggest that these defendants were subjectively

9

aware that plaintiff would commit serious self-harm. To the contrary, plaintiff's own description of his interactions with defendants suggest that he inflicted minimal harm to himself to get a response from defendants, which does not support an inference of deliberate indifference to a substantial risk of serious harm.

*Third*, the Eighth Amendment also gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976), which includes a right to appropriate mental health treatment. *See Rice ex. Rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 665 (7th Cir. 2012). To state a claim for deliberate indifference under the Eighth Amendment on a denial of medical care claim, the plaintiff must allege facts to give rise to a reasonable inference that: (1) he had a serious medical need; (2) defendants knew that plaintiff needed medical treatment; and (3) defendants consciously failed to take reasonable measures to provide the necessary treatment. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). It is possible that plaintiff may have been asking defendants to speak with a mental health professional when he was threatening self-harm and cutting himself, but plaintiff does not allege as much and he has alleged that inmates on observation status are checked on by staff. Instead, it appears that defendants were responding directly to plaintiff's threats of self-harm. Given that plaintiff had been placed on observation status and Dr. Hoem had been alerted to the situation, it would be unreasonable to infer that defendants' responses ignored a clear need for plaintiff to receive different or more specific attention to his mental health needs. Although plaintiff may amend his complaint to include additional allegations related to whether defendants ignored plaintiff's requests to speak with a mental health care professional or failed to properly alert Dr. Hoem to the

situation, as currently pled it would be unreasonable to infer that defendants responded with deliberate indifference to plaintiff's mental health needs.

*Fourth*, the Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Because prison officials must sometimes use force to maintain order, the central inquiry for a court faced with an excessive force claim is whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Although plaintiff may have been threatened with the use of incapacitating agents by multiple officers, he has not alleged that the spray was actually administered, nor that defendants otherwise used force against him suggesting a malicious intent to harm him rather than an effort to curb his self-harm.

Therefore, the court cannot identify any Eighth Amendment claim upon which plaintiff may proceed. Since it is conceivable that plaintiff has omitted details about the degree to which he was able to harm himself, whether he requested and was denied access to mental health professionals, or whether any of the defendants, in fact, used an incapacitating agent in response to his self-harming, he still might be able to articulate a claim against defendants. As such, the court will give plaintiff a brief window of time to file an amended complaint that articulates his claim with more specificity.

## II. State Law Claims

Plaintiff seeks to proceed against defendants on state law claims of negligence and for defendants' violation of prison policies. Since the court is requiring plaintiff to submit an amended complaint providing more specific facts about whether he harmed himself and

defendants' responses, among other possible factual allegations, it will not address whether plaintiff has stated any state law claims, except to say that if plaintiff cures the deficiencies identified above and the court grants him leave to proceed on federal claims against defendants, the court likely will exercise supplemental jurisdiction over Wisconsin negligence claims.  *See* 28 U.S.C. § 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).[3]

### III.  ADA and Rehabilitation Act

Finally, in any amended complaint, plaintiff should omit an ADA/Rehabilitation Act claim.  The ADA prohibits discrimination against qualified persons with disabilities.  To establish a violation of Title II of the ADA, a plaintiff "must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (*citing Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)).  The Rehabilitation Act is substantially identical, except that a claim under § 504 of the Act has four elements: (1) an individual with a disability; (2) who was otherwise qualified to participate; (3) but who

---

[3] However, plaintiff should omit any claims related to defendants' failure to follow prison policies. Evan assuming defendants did not follow prison policies, those violations do not support a constitutional claim. *See, e.g.*, *Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004).  Nor would such violations support a state law claim over which the court might exercise supplemental jurisdiction, since prison rules and regulations do not provide for a private cause of action. *See Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1129 (W.D. Wis. 2007) (citing *Outagamie Cty. v. Smith*, 38 Wis. 2d 24, 34 155 N.W.2d 639, 645 (1968) (with respect to laws that are not made enforceable by statute expressly, an action is reviewable only by certiorari)).

was denied access solely by reason of disability; (4) in a program or activity receiving federal financial assistance. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012).

The court construes this claim under the Rehabilitation Act only because it is an open question in the Seventh Circuit whether ADA violations not implicating constitutional rights may be brought against state actors. *See Norfleet v. Walker,* 684 F.3d 688, 690 (7th Cir. 2012). "Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, 'the Supreme Court has located a duty to accommodate in the statute generally.'" *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

Although for purposes of screening the court accepts that plaintiff's mental illnesses renders him disabled as defined by the ADA and Rehabilitation Act, the nature of his allegations do not satisfy either the second or third elements of the prima facie case. WSPF is considered a "public entity," but plaintiff does not claim to be excluded from any service, program, or activity offered to other prisoners *because* of his mental illness. 42 U.S.C.A. § 12132. Rather, he claims that defendants are simply denying him mental health care. There is no suggestion from plaintiffs' allegations that he might be able to state a claim under these statutes. As such, unless plaintiffs can in good faith allege that he has been denied services, programs or activities because of a disability, then plaintiff should not include this claim in his proposed amended complaint.

Plaintiff should draft his proposed amended complaint as if he is telling a story to someone who knows nothing about his situation, paying particular attention to exactly what he said to defendants, when he said it and how they responded. If he submits a

13

proposed amended complaint by the deadline set forth below, the court will screen is under §§ 1915(e)(2), 1915A.

ORDER

IT IS ORDERED that:

1. Plaintiff Deshaun Staten is DENIED leave to proceed on any claims, and his complaint is DISMISSED without prejudice.

2. Plaintiff has until **April 5, 2021,** to file an amended complaint that states a claim upon which relief can be granted.  **Plaintiff's failure to file an amended complaint by that deadline will result in the court dismissing this action with prejudice for failure to state a claim.**

3. Plaintiffs' motions related to screening (dkt. ##6, 13) are DENIED as moot.

Entered this 15th day of March, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge